UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

BRANDON NELSON CONRAD,              )
                                    )
        Plaintiff,                  )        Civil No. 3:17-CV-00056-GFVT
                                    )
V.                                  )        **MEMORANDUM OPINION**
                                    )               **&**
MATTHEW G. BEVIN, in his official   )        **ORDER**
capacity as Governor of the Commonwealth )
of Kentucky, et al.,                )
                                    )

        Defendants.

                        ***   ***   ***   ***

       Brandon Conrad practiced medicine in Kentucky, before the Kentucky Board of Medical

Licensure issued an emergency order, temporarily suspending his medical license. In this action,

he brings several constitutional and federal law claims in an attempt to overturn this decision and

reinstate his license. However, none of his claims present a legal basis for relief. Therefore, the

requests by each defendant to dismiss this action are **GRANTED**.

                                   **I**

                                   **A**

       Plaintiff Brandon Conrad, M.D., is a physician licensed to practice medicine in the

Commonwealth of Kentucky. [R. 16 at ¶12.] Because of his treatment of two patients, Dr.

Conrad was accused of impairment while practicing medicine. *Id.* at ¶ 21. Dr. Conrad was

notified by Ephraim McDowell Regional Medical Center on or about Friday, March 17, 2017,

that his hospital privileges were suspended temporarily, pending a Medical Executive Committee

review of his treatment of the two patients in question. *Id.* at ¶ 20. Following this notification,

Dr. Conrad met with agents of Ephraim McDowell concerning his alleged impairment, at which

time Ephraim McDowell required Dr. Conrad undergo an evaluation prior to the reinstatement of his hospital privileges. *Id.* at ¶21–22. Dr. Conrad met with Defendant Will W. Ward, Jr., M.D., in his official capacity as the Chairman of Defendant Kentucky Committee on Impaired Physicians, Inc., d/b/a Kentucky Physicians Health Foundation, Inc. (the Foundation), after which the Foundation and Dr. Ward required Dr. Conrad to submit to ninety-six (96) hours of psychiatric evaluation prior to returning to work. *Id.* at ¶23–24. Dr. Ward cited concerns about Dr. Conrad's use of prescribed psychoactive medications. *Id.* at ¶24.

After Dr. Conrad's interview with Dr. Ward, Dr. Conrad's counsel requested documents pertaining to any allegations or findings of the Foundation's in-house evaluation. Dr. Conrad was informed he was only entitled to his laboratory results, not any other information. *Id.* at ¶27. On May 9, 2017, Dr. Conrad's attorneys contacted the Foundation requesting the Foundation reconsider its requirement that Dr. Conrad submit to ninety-six-hour evaluation, as Dr. Conrad's medications were prescribed for his common mental health ailments: anxiety and attention deficit hyperactivity disorder ("ADHD"). *Id.* at ¶29. On May 10, 2017, Dr. Ward sent a letter to the Kentucky Board of Medical Licensure (the Board), providing a history of the Foundation's involvement with Dr. Conrad, reciting Dr. Conrad's laboratory results, and outlining the Foundation's recommendation.[1] [R. 16-8 at 2–3.] Subsequent to this correspondence, the Board opened an investigation into Dr. Conrad.

---

[1] In his Complaint, Dr. Conrad asserts that this May 10, 2017, letter from Dr. Ward to the Board acknowledged receipt of Dr. Conrad's May 9, 2017, letter to Dr. Ward. [R. 16 at ¶30.] However, upon review of the May 10, 2017, letter, which was provided by Dr. Conrad, Dr. Ward does not acknowledge receipt of any communication from Dr. Conrad or his attorneys after May 3, 2017. [R. 16-8.]

On June 2, 2017, Dr. Conrad met with Kevin Payne, an investigator for the Board, who allegedly told Dr. Conrad that the Board was treating Dr. Ward's May 10, 2017, letter as a "grievance" because the Foundation was asserting Dr. Conrad refused to submit to the recommended ninety-six-hour evaluation. [R. 16 at ¶33.] Dr. Conrad submitted to the ninety-six-hour evaluation at the Florida Recovery Center (FRC) on or about June 10, 2017, where he was evaluated by three physicians. *Id.* at ¶34. Following the evaluation, Dr. Scott Teitelbaum[2] noted, in the last three years, Dr. Conrad only consumed one or two alcoholic drinks per week, but approximately three years earlier, Dr. Conrad had consumed alcohol on a daily basis. *Id.* at ¶37. Based on these observations, Dr. Teitelbaum diagnosed Plaintiff with a moderate alcohol use disorder. *Id.* at ¶39. On July 5, 2017, Dr. Conrad requested records of his evaluation and investigation from the Board, the Foundation, and FRC. *Id.* at ¶41–43. Dr. Conrad received records from the Foundation and FRC on July 17, 2017. *Id.* at ¶51.

Defendant Michael Rodman, in his official capacity as Executive Director of the Board, e-mailed Dr. Conrad on July 14, 2017, informing Dr. Conrad that an Inquiry Panel from the Board would consider his case on July 20, 2017, namely, whether to issue an emergency order against Dr. Conrad's license. [R. 16-10 at 2.] The letter informed Dr. Conrad:

> You have already been given the opportunity to respond to this issue during the investigation process. The only issue to be addressed with the Panel is whether or not there would be a danger to patients or the public if the Panel permits you to continue to practice without restrictions while the Complaint is being resolved.
>
> The Panel meeting will begin at 9:30 a.m., and it is not mandatory that you attend this meeting; your attendance is optional.

---

[2] Dr. Conrad does not explain who Dr. Teitelbaum is in relation to the involved parties.

*Id.* at 3.  Dr. Conrad requested written notice of the accusations against him that were to be considered at the Inquiry Panel, which was refused by the Board on July 18, 2017.  [R. 16 at ¶52.]  Also on July 18, 2017, Dr. Conrad underwent psychiatric evaluation by Dr. Timothy S. Allen and Dr. John Ranseen, which determined that Dr. Conrad suffered from ADHD but did not have an Alcohol Use Disorder.  *Id.* at ¶53.

Inquiry Panel B met on July 20, 2017, to consider issuance of an emergency order against Dr. Conrad.  Dr. Conrad attended, but was denied the opportunity to present written evidence to the panel.[3]  *Id.* at ¶55–57.  After the hearing, the Panel voted to issue Dr. Conrad a Complaint and Emergency Order of Suspension, but allowed Dr. Conrad to submit to ninety-day inpatient treatment for Alcohol Use Disorder in lieu of a Complaint and Suspension.  [R. 16-11 at 2.]  Dr. Conrad was given until August 4, 2017, to accept the inpatient treatment before the Board would proceed with the Complaint and Emergency Order of Suspension.  *Id.*  Dr. Conrad believes that the time elapsed between Dr. Ward's letter on May 10, 2017, and the scheduling of a Panel hearing on July 14, 2017, as well as the Board's permission to delay the effective date of the emergency suspension of Dr. Conrad's license for fifteen days reflects an impossibility of the Board to demonstrate the required "immediate danger" that warrants an emergency suspension of his license.  [R. 16 at ¶61–63.]  On August 11, 2017, the Board suspended Dr. Conrad's license on an emergency basis.  [R. 41 at 3.]

During this process, on June 20, 2017, the Lexington Herald-Leader published an article concerning Defendant Matt Bevin, in his official capacity as Governor of the Commonwealth of

_____

[3] Dr. Conrad states he had prepared written evidence, but a notice posted on the door of the meeting room stated that all written evidence was to be submitted to the Inquiry Panel seven (7) days prior to the hearing.  [R. 16 at ¶57.]  Dr. Conrad only received notice of the hearing on July 14, 2017, six (6) days prior to the hearing.  [R. 16-10 at 2.]

Kentucky, and Defendant Andy Beshear, in his official capacity as Attorney General of the Commonwealth of Kentucky. [R. 16-4.] The article cites statements by the Kentucky Public Protection Cabinet that Governor Bevin planned to sign an executive order "that would dramatically change how the [professional oversight] boards operate." *Id.* at 2. Attorney General Beshear expressed concerns over Governor Bevin's plan, and he opposed having the executive directors of these boards appointed by the Governor and answerable to the executive branch. *Id.* at 2–3. Elizabeth Kuhn, a spokesperson for the Public Protection Cabinet, stated, "Without necessary state supervision, many of Kentucky's professional licensing boards are vulnerable to potential anti-trust liability." *Id.* at 3. No one cited in the article accused the Board, or any other Kentucky licensing board, of actual violations of anti-trust or any other law. Attorney General Beshear's comments were restricted to his concerns about the separation of powers. Under Governor Bevin's proposed executive order, Attorney General Beshear was concerned that a professional licensure board would be unable to disagree with its lawyer or executive director, since both the lawyer and executive director would be employed by the executive branch. *Id.* at 4. "Our position and the law says it's the General Assembly's job to reorganize these boards. I'm going to do my job and protect the General Assembly's authority even if the members of the General Assembly won't," Attorney General Beshear stated. *Id.*

**B**

Dr. Conrad initiated this action on July 17, 2017, prior to his hearing before the Board Inquiry Panel. In his First Amended Complaint, Dr. Conrad claims the structure of the Board as established by KRS § 367.175(2) is unconstitutional and in violation of other Kentucky law. *Id.* In particular, Dr. Conrad claims the process to which he was subjected violates both state and

federal anti-trust laws, Dr. Conrad's right to due process as guaranteed by the Fourteenth Amendment, Dr. Conrad's right to equal protection as guaranteed by the Fourteenth Amendment, the Americans with Disabilities Act, KRS §§ 13B.030 and 218A.202(7). *Id.* All defendants have filed Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## C

Federal Rule of Civil Procedure 12(b)(1) provides that a defendant may assert lack of subject-matter jurisdiction as a defense. A motion to dismiss under Rule 12(b)(1) is different from a motion to dismiss under Rule 12(b)(6) because it challenges the Court's power to hear the case before it. When jurisdiction is challenged under this rule, the burden is on the plaintiff to prove that jurisdiction exists. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). In answering this question, the Court is "empowered to resolve factual disputes" and need not presume that either parties' factual allegations are true. *Id.*

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a plaintiff's complaint. In reviewing a Rule 12(b)(6) motion, the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). The Supreme Court explained that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). See also *Courier v. Alcoa Wheel & Forged Products*, 577 F.3d 625,

629 (6th Cir. 2009). In the complaint, Dr. Conrad attached eight exhibits. The Court may consider these exhibits without converting this Motion to a motion for summary judgment because these exhibits were attached to the complaint. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001). In this case, there seem to be few, if any, facts in dispute. Each part of Dr. Conrad's complaint states are determinable by the relevant precedent for this Court.

## II

## A

Several of the defendants requested this Court refrain from interfering with the administrative processes of the Board based on the *Younger* doctrine. The Supreme Court of the United States, in *Younger v. Harris*, created an abstention doctrine prohibiting federal courts from enjoining state court proceedings. 401 U.S. 37 (1971). In recent years, the Supreme Court has limited the *Younger* abstention to three circumstances: (1) ongoing state criminal prosecutions, (2) ongoing state-initiated civil enforcement proceedings "that are akin to criminal prosecutions," and (3) ongoing state civil proceedings that involve the ability of courts to perform judicial functions. *Sprint Commc'ns, Inc. v. Jacobs*, 134 S.Ct. 584, 588 (2013); *New Orleans Public Service, Inc. (NOPSI) v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989). In addition, administrative proceedings that are judicial in nature are considered "state-initiated civil proceedings" for the purpose of determining whether *Younger* abstention applies, even if the case has not yet progressed to state-court at the time of federal review. *See Ohio Civil Rights Comm'n v. Dayton Christian Schools*, 477 U.S. 619, 627 (1986); *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 432–34 (1982); *Gibson v. Berryhill*, 411 U.S. 564, 576–77 (1973). Without these "exceptional" circumstances, a pending state court

action is not a bar to federal jurisdiction. *Id.* (citing *Colorado River Water Conservation Dist. V. United States*, 424 U.S. 800, 817 (1976); *McClellan v. Carland*, 217 U.S. 268, 282 (1910)).

Once a proceeding fits into one of the three categories outlined in *Sprint Commc'ns, Inc.* or *NOPSI*, a court turns to a three-factor test, defined in *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423 (1982), to determine whether *Younger* abstention may occur. *See Sprint Commc'ns, Inc.* 134 S.Ct. at 593–94. Abstention is proper when "(1) state proceedings are currently pending; (2) the proceedings involve an important state interest; and (3) the state proceedings will provide the federal plaintiff with an adequate opportunity to raise his constitutional claims." *Doe v. Univ. of Ky.*, 860 F.3d 365, 369 (6th Cir. 2017) (citing *Middlesex*, 457 U.S. at 432–34).

The Kentucky Board of Medical Licensure is an independent board, created in state government, with the power to exercise all medical and osteopathic licensure functions, consisting of fifteen members. Ky. Rev. Stat. § 311.530. The judiciary of the Commonwealth of Kentucky cannot review or enjoin the actions of the Board until all administrative remedies are exhausted. Ky. Rev. Stat. § 311.555. Board hearings are administrative hearings, conducted pursuant to KRS Chapter 13B. Administrative Hearings. Ky. Rev. Stat. § 311.550(24). The president of the Board divides the board into two "panels" of seven members each to act as either an "Inquiry Panel" or a "Hearing Panel." Ky. Rev. Stat. § 311.591(1). An administrative procedure begins when an individual, organization, or entity files a "grievance" with the Board, at which point the Board assigns an Inquiry Panel to investigate the grievance. Ky. Rev. Stat. § 311.591(2). If, upon inquiry, the Board discovers a violation of KRS Chapter 311 sufficient to warrant discipline, the Board issues a "complaint" served upon the charged physician. Ky. Rev.

Stat. §§ 311.591(3) and (4).  The director then assigns the matter for an administrative hearing to a Hearing Panel.  Ky. Rev. Stat. § 311.591(5).  No member of the Inquiry Panel may also serve on the Hearing Panel in the same matter.  *Id.*  Once the administrative hearing is complete, the Hearing Panel issues a final order either dismissing the complaint or finding a violation of KRS Chapter 311; upon a finding of violation, the Board may impose a discipline by revoking, suspending, restricting, denying, or limiting a license, and/or may reprimand or probate the licensee, and/or may impose a fine or restitution.  Ky. Rev. Stat. § 311.591(7).  If, during the investigation period, the Inquiry Panel has probable cause to believe that a violation constitutes a danger to the health, welfare, and safety of patients and/or the general public, the Inquiry Panel may issue an Emergency Order to suspend, limit, or restrict a physician's license.  Ky. Rev. Stat. § 311.592.  Like other administrative agencies in the Commonwealth of Kentucky, an Emergency Order is final, and can be appealed to the state Circuit Court.  Ky. Rev. Stat. §§ 311.592, 13B.125, 13B.140.  The appeal of an Emergency Order does not prejudice the Board's ability to hold an administrative hearing in front of the Hearing Panel to determine a final order.  Ky. Rev. Stat. § 311.592.  Once a final order is entered, the physician may then seek judicial review in accordance with KRS Chapter 13B. Administrative Hearings.  Ky. Rev. Stat. § 311.593.  Once administrative remedies are exhausted, the Kentucky judiciary may modify, remand, or otherwise disturb actions by the Board that (1) constitute a clear abuse of discretion; (2) are clearly beyond legislative delegated authority, or (3) violated procedure pursuant to KRS § 311.591.  Ky. Rev. Stat. § 311.555.  Upon review, the Circuit Court can reverse (in whole or part) and remand the Board's order for multiple reasons, including violations of constitutional or

statutory provisions or if the court finds the order is deficient as provided by law. Ky. Rev. Stat. § 13B.150.

The Foundation is a nonprofit corporation that has a contract with the Board pursuant to KRS § 311.617. The Board works with the Foundation to "promote the early identification, intervention, treatment, and rehabilitation of physicians who may be impaired by reason of illness, alcohol or drug abuse, or as a result of any physical or mental condition." Ky. Rev. Stat. § 311.616(1). The Board may contact the Foundation to determine the existence or extent of a physician's impairment, but serves only as an advisor to the Board while the Board makes the ultimate licensing decision.

The Kentucky Board of Medical Licensure is an administrative agency created by Kentucky statutes to regulate physicians' licenses. Administrative boards exercise judicial functions when the board hears evidence, the parties are given opportunities to brief and argue the facts, and the parties are given opportunities to seek review in court of the administrative board's decision. *Nelson v. Jefferson County, Ky.*, 863 F.2d 18, 19 (1988). Like in *Middlesex*, a Board proceeding begins by filing of a grievance and then a complaint. Ky. Rev. Stat. § 311.591; *Middlesex*, 457 U.S. at 433. Upon filing of a grievance, an Inquiry Panel investigates the claim by collecting records or documents or interviewing other parties, much like United States Attorneys or Commonwealth Attorneys; the Inquiry Panel may even seek enforcement of subpoenas and/or search warrants issued by the state courts if necessary. Ky. Rev. Stat. § 311.591. After sufficient investigation, the Inquiry Panel determines whether to issue a complaint, similar to how a grand jury would return an indictment against an alleged criminal. The Hearing Panel conducts a hearing, where parties are able to file pleadings, motions,

objections, briefs, etc., and the hearing officer affords all parties the opportunity to respond, present evidence and argument, conduct cross-examination, and submit rebuttal evidence. Ky. Rev. Stat. § 311.550(24); 13B.080. Decisions by the Board are then reviewable by courts. Thus, under *Nelson*, the proceedings of the Board under KRS Chapter 311 are judicial administrative proceedings. Even if Board hearings fail to include all elements of due process typically afforded to a defendant in a criminal prosecution, the Board is proceeding against Dr. Conrad to enforce its medical licensure rules, thus performing an adjudicative function. *Doe v. Univ. of Ky.*, 860 F.3d 365, 370 (6th Cir. 2017) (citing *Fieger v. Thomas*, 74 F.3d 740, 744 (6th Cir. 1986).

Because the hearings at issue in this matter are judicial administrative proceedings, this matter invokes the second category of *Sprint Commc'ns, Inc.* or *NOPSI*: an ongoing state-initiated civil enforcement proceeding. Thus, the Court must now determine if, under the *Middlesex* factors, *Younger* abstention is appropriate. *Doe v. Univ. of Ky.*, 860 F.3d at 369. Abstention is proper when "(1) state proceedings are currently pending; (2) the proceedings involve an important state interest; and (3) the state proceedings will provide the federal plaintiff with an adequate opportunity to raise his constitutional claims." *Id.* (citing *Middlesex*, 457 U.S. at 432–34).

First, a state proceeding must be "currently pending." *Doe v. Univ. of Ky.*, 860 F.3d at 369; *Middlesex*, 457 U.S. at 432–34. To determine the applicability of *Younger* abstention, the proper time of reference is when the federal complaint is filed. *Zalman v. Armstrong*, 802 F.2d 199, 204 (6th Cir. 1986). Dr. Conrad filed his initial complaint on July 17, 2017, and his First Amended Complaint on July 31, 2017. [R. 1, R. 16.] The Board sent notice to him on July 14,

2017, of the scheduled meeting with the Inquiry Panel, which did not meet until July 21, 2017.

[R. 16-10.] A Complaint was entered against Dr. Conrad on or after August 3, 2017. [R. 40 at

6.] Thus, as of both July 17 and July 31, the Board had initiated an Inquiry Panel against him,

but the Hearing Panel would not be scheduled until after the Board entered a complaint. Ky.

Rev. Stat. § 311.591. Thus, as of both July 17 and July 31, Dr. Conrad still needed to participate

in a Hearing Panel, so these actions were still pending in the administrative agency. The Board

also issued an Emergency Order against him on or after August 3, 2017. [R. 40 at 6.] That

Order became immediately appealable to the Franklin Circuit Court. Ky. Rev. Stat §§ 311.592,

13B.125, 13B.140. However, even as of the date of this order, Dr. Conrad has not indicated he

filed an appeal in state court, only that he has filed this current matter and has pursued further

administrative hearings. [R. 40 at 6.] Therefore, the state proceedings are currently pending for

the purposes of *Younger* abstention.

Next, the Court reviews whether the currently pending proceedings involve an important

state interest. *Doe v. Univ. of Ky.*, 860 F.3d at 369; *Middlesex*, 457 U.S. at 432–34. "[In

determining substantiality of a state's interest in the proceedings,] we do not look narrowly to its

interest in the *outcome* of the particular case . . . what we look to is the importance of the generic

proceedings to the State." *NOPSI*, 491 U.S. at 365. For *NOPSI*, this meant considering

Louisiana's general interest in regulating intrastate retail rates, not Louisiana's specific interest

in reducing NOPSI's retail rate. *Id.*; *see also Younger*, 401 U.S. at 51–52 (California's general

interest in enforcing criminal laws, not specific interest in preventing distribution of handbills);

*Ohio Civil Rights Comm'n*, 477 U.S. at 628 (Ohio's general interest in preventing sexual

discrimination, not specific interest in the firing of an employee). For this matter, Kentucky has

a general interest in regulating the licensure and practice of professionals. Kentucky has a "compelling interest in providing its citizens with quality health care." *Abul-Ela v. Ky. Bd. Of Medical Licensure*, 217 S.W.3d 246, 251 (Ky. Ct. App. 2006)

Finally, the state proceedings must provide the Dr. Conrad with an adequate opportunity to raise his constitutional claims. Once the administrative proceedings end, Dr. Conrad has the opportunity to appeal the administrative orders in Franklin County Circuit Court. If he is still unhappy with the decision in Circuit Court, Dr. Conrad can then petition for further appeals in Kentucky appellate courts. *See Abul-Ela v. Ky. Bd. Of Medical Licensure*, 217 S.W.3d 246 (Ky. Ct. App. 2006) (plaintiff appealed KBML decision to Jefferson Circuit Court and then to the Court of Appeals of Kentucky, alleging violations of due process rights). But this review is limited. Kentucky law restricts review to the record of administrative proceedings, and is bound by the determinations of the KBML if supported by substantial evidence. *Id.* at 250. The State Court permits *de novo* review of the law, but only to ensure the agency complied with the rights guaranteed by Kentucky Statutes. *See* Ky. Rev. Stat. Ann. § 311.555. This Court finds that Dr. Conrad will be unable to raise his issues adequately in the state proceedings, and thus, abstention is inappropriate here.

**B**

As to Governor Bevin and Attorney General Beshear, Dr. Conrad claims they knew of these violations and allowed them to continue, requesting monetary damages, as well as equitable relief in the form of reinstating his medical license. *Id.* Both Attorney General Andy Beshear and Governor Matt Bevin filed Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6). [R. 34, R. 36.] Defendants Beshear and Bevin offer the same two theories, first that Dr.

13

Conrad's Complaint failed to invoke the subject matter jurisdiction of this Court. *Id.* at 1. Next, because both Governor Bevin and Attorney General Beshear are immune from liability for executive action under the Eleventh Amendment [R. 34-1 at 12; R. 36-1 at 2], Plaintiff's Complaint fails to state a claim upon which relief can be granted. *Id.*

## 1

Governor Bevin asserts his immunity from Dr. Conrad's claims under the Eleventh Amendment. [R. 36-1 at 6.] Dr. Conrad argues, because Governor Bevin has previously "taken action" as to other state boards, he could also reorganize the Kentucky Board of Medical Licensure by requiring the executive director to answer to the executive branch. [R. 42 at 4–5.] Dr. Conrad requests "prospective relief from Governor Bevin" by requesting he reorganize the structure of the Board, and he contests the constitutionality of the structure of the Board. However, simply because a governor is under a duty to enforce state laws does not make him a proper party to every action where a plaintiff attacks the constitutionality of a state statute. *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1416 (6th Cir. 1996). This Court has already determined that Governor Bevin and Attorney General Beshear are not proper parties to this action. [R. 32 at 8.] Effectively, he seeks for this Court to mandate Governor Bevin to act by forcing him to reorganize the structure of the Board.

The Eleventh Amendment prohibits a citizen from suing a state. Actions against state officials in their official capacity, as is here against Governor Bevin, in his official capacity as Governor of the Commonwealth of Kentucky, are considered suits against the state, and thus barred by the Eleventh Amendment. *Great Northern Life Ins. Co. v. Read*, 322 U.S. 47, 50–51 (1944); *see also Ford motor Co. v. Department of Treasury of State of Indiana*, 323 U.S. 459,

349–50 (1945). *Ex Parte Young* creates a narrow exception to the Eleventh Amendment, permitting injunctive action against a state official when the official has some connection with the enforcement of an unconstitutional act. 209 U.S. 123, 157 (1908). While Dr. Conrad has sued Governor Bevin for injunctive action concerning what he believes is an unconstitutional statute, Governor Bevin has no connection with the enforcement of the statute simply because he is the governor and could make an executive order. As stated in *Ex Parte Young*:

> If, because they were law officers of the state, a case could be made for the purpose of testing the constitutionality of the statute, by an injunction suit brought against them, then the constitutionality of every act passed by the legislature could be tested by a suit against the governor and the attorney general, based upon the theory that the former, as the executive of the state, was, in a general sense, charged with the execution of all its laws, and the latter, as attorney general, might represent the state in litigation involving the enforcement of its statutes. . . In making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act . . .

209 U.S. 123, 157 (1908). Neither Governor Bevin nor any other member of the executive branch created or structured the Board. The Board is a product of the legislative branch, created when the Kentucky General Assembly enacted KRS §§ 311.530 *et seq.* By joining the Governor as a party in this action, Dr. Conrad has attempted to join the Commonwealth of Kentucky. This action is barred by the Eleventh Amendment, and therefore, this Court must dismiss Dr. Conrad's claims against Governor Bevin for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

**2**

Attorney General Andy Beshear also asserts his immunity from this suit for similar executive action. [R. 34-1 at 12.] Mr. Conrad claims KRS § 15.020, "mandates that Defendant Beshear enforce the provisions of KRS Chapter 311, 202 KAR 9:240, and applicable policies of

KBML." [R. 16 at ¶14, n. 2.] However, Dr. Conrad does not allege that the Board is in violation of the statutes dictating its operation. "General authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law." *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1416 (6th Cir. 1996) (citations omitted). The structure and authorities pertaining to the board are outlined in KRS §§ 311.530–311.620, and none of these statutes grant the Attorney General any authority over KBML; indeed, KRS § 311.530(1) establishes the Kentucky Board of Medical Licensure as an "independent board," and KRS § 311.605 contemplates assistance from County and Commonwealth Attorneys, but not the Attorney General. While Dr. Conrad is correct in that an injury can arise from a lack of regulation by the government,[4] Attorney General Beshear's "lack of action" is because he has no authority to act. This Court cannot force Attorney General Beshear to act where he has no authority.

As stated above, the Eleventh Amendment prohibits a citizen from suing a state or state officials in their official capacity, as Dr. Conrad has attempted to do here against Attorney General Beshear. *Great Northern Life Ins. Co. v. Read*, 322 U.S. 47, 50–51 (1944); *see also Ford Motor Co. v. Department of Treasury of State of Indiana*, 323 U.S. 459, 349–50 (1945). *Ex Parte Young* creates a narrow exception to the Eleventh Amendment, permitting injunctive action against a state official when the official has some connection with the enforcement of an unconstitutional act. 209 U.S. 123, 157 (1908). As it was for Governor Bevin, Attorney General

---

[4] Dr. Conrad alleges standing under *Lujan v. Defenders of Wildlife*, pursuant to Defendant Beshear's inaction. 504 U.S. 555, 561 (1992) ("When plaintiff's asserted injury arises from the government's allegedly unlawful regulation or lack of regulation of someone else, causation and redressability required for standing hinge on response of the regulated or reusable third party to the government action or inaction and on the response of others as well.").

Beshear has no connection with the enforcement of the statutes simply because he is the Attorney General. As contemplated in *Ex Parte Young*, neither Governors nor Attorney Generals are "connected" with the enforcement of the act simply because of their general duty to execute all laws. 209 U.S. at 157. This Court has already determined that Governor Bevin and Attorney General Beshear are not proper parties to this action. [R. 32 at 8.] Attorney General Beshear did not create the Board, nor does he monitor their actions. The action against Attorney General Beshear is barred by the Eleventh Amendment, and therefore, this Court must dismiss Dr. Conrad's claims against Attorney General Beshear for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

## C

In Counts One and Two, Dr. Conrad claims the Board, Mr. Rodman, Dr. Jones, Dr. Ward, and the Foundation violated federal anti-trust laws under 15 U.S.C. § 2 and state anti-trust laws under KRS § 367.175(2). KRS §§ 367.175(1) and (2) are based directly on the federal Sherman Anti-Trust Act, 15 U.S.C. §§ 1–2. *Mendell v. Golden-Farley of Hopkinsville, Inc.*, 573 S.W.2d 346, 348–49 (Ky. Ct. App. 1978). Kentucky Courts and District Courts in Kentucky have analyzed KRS § 367.175 in the same framework as 15 U.S.C. §§ 1–2. *Racetech, LLC v. Ky. Downs, LLC*, 169 F. Supp. 3d 709, 717 (W.D. Ky. 2016).

Dr. Conrad bases these claims on the holding of *N.C. State Bd. of Dental Exam'rs, v. FTC*, claiming that the Supreme Court abrogated immunity for the Board in situations like these. [R. 16 at 15.] In *Parker v. Brown*, the Supreme Court granted immunity against antitrust litigation for anticompetitive conduct by a State when the State acted in its sovereign capacity. 317 U.S. 341, 350–51 (1943). Administrative boards, such as the Kentucky Board of Medical

Licensure, which non-sovereign actors controlled by market participants, enjoy immunity under *Parker* only if the challenged restraint is clearly articulated and affirmatively expressed as state policy and if that policy is actively supervised by the State. *FTC v. Phoebe Putney Health Sys., Inc.,* 568 U.S. 216, 225 (2013). Here, as this Court has already determined, the Board meets both requirements and thus is immune from this suit under *Parker*.

The Board has a clear directive from the "declared policy of the General Assembly of Kentucky" to regulate and control the practice of medicine "to protect the health and safety of the public. Further, "The General Assembly of Kentucky has created the board, as defined in KRS 311.530, to function as an independent board…" Ky. Rev. Stat. § 311.555. Second, the Board is authorized to "promulgate reasonable administrative regulations," but these regulations undergo a public notice and comment period and require legislative approval. Ky. Rev. Stat. § 311.565; [R. 9 at 16]. Also, unlike the Board of Dental Examiners in North Carolina, the Kentucky Board of Medical Licensure is unable to proceed unilaterally against unlicensed individuals. Rather, the Board must seek enforcement of an injunction against unlicensed individuals through the Kentucky court system. Ky. Rev. Stat. § 311.605.

Similarly, the Board's contract with the Foundation clearly articulates a state policy to "promote the early identification, intervention, treatment, and rehabilitation of physicians who may be impaired by reason of illness, alcohol or drug abuse, or as a result of any physical or mental condition." Ky. Rev. Stat. § 311.616(1). The Foundation has no power to determine whether a physician's license will be affected after an evaluation; after consultation, the final decision is left solely to the Board. Mr. Rodman, Dr. Ward, and Dr. Jones are all sued in their official capacities as officers for these entities, and thus the same immunity applies.

18

More precisely read, *N.C. State Bd. of Dental Exam'rs* holds that licensure Boards may be comprised of market participants, but immunity for such state action immunity requires the anticompetitive conduct be actively supervised by the State. Dr. Conrad has failed to present any evidence to suggest the Board has acted against multiple licensees in a way that has a substantial effect on competition. Instead, his sole complaint is that the structure of a regulatory board that includes market participants is *de facto* unconstitutional. The Board's actions against Dr. Conrad were initiated due to health and safety concerns, and disciplinary action against an individual licensee would only have a *de minimis* effect on competition. Therefore, because the Board, the Foundation, Mr. Rodman, Dr. Ward, and Dr. Jones are all immune to antitrust litigation under *Powers*, Dr. Conrad's federal and state antitrust claims under 15 U.S.C. § 2 and KRS § 367.175(2) must be dismissed pursuant to Rule 12(b)(1).

**D**

Dr. Conrad seeks relief under 42 U.S.C. § 1983 in Count Three, alleging that the Board's decision to subject him to an emergency order violated his Fourteenth Amendment right to substantive and procedural due process. More specifically, Dr. Conrad believes that the pre-deprivation hearing was inadequate because the statutory framework and evidentiary presumption produce "stringent requirement[s]" that "make it almost impossible for any accused physician. . . [to prevail] at an emergency hearing." [R. 16 at 15–21.]

The Sixth Circuit has recognized that medical doctors have a property interest in retaining medical privileges, thus the question before the Court is "whether the plaintiff was provided with sufficient notice and the opportunity to be heard at a meaningful time and in a meaningful manner." *See Benjamin v. Brachman*, 246 F. App'x 905, 914 (6th Cir. 2007)

(quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).

Dr. Conrad argues that the administrative action taken by the Kentucky Board of Medical Licensure is not "rationally related to a legitimate government interest." [R. 4-1 at 7.] Despite this assertion, the Supreme Court has repeatedly held that "[t]here can be no doubt the government has an interest in protecting the integrity and ethics of the medical profession." *Gonzales v. Carhart*, 550 U.S. 124, 157 (2007) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 731 (1997)). The Court has not only held regulation of the medical profession to be proper, but unique state interests exist in the context of licensing professionals. *See Barry v. Barchi*, 443 U.S. 55 (1979). In *Barchi*, the Supreme Court determined that the New York State Racing and Wagering Board, which licenses horse trainers and establishes regulations for those trainers, could suspend a trainer's license that was protected by the Fourteenth Amendment's Due Process Clause without a pre-deprivation hearing. *Barchi*, 443 U.S. at 63 (1979) (the regulatory scheme "does not affront the Due Process Clause by authorizing summary suspensions" in the absence of a pre-suspension hearing even though the trainer "had a property interest in his license sufficient to invoke the protection of the Due Process Clause"). Despite the fact that a positive drug test triggered a rebuttable evidentiary presumption that the trainer had improperly engaged in horse doping, the statute did not run afoul of the Constitution, in part because the established statutory procedures were properly followed and "they sufficed for the purposes of probable cause and interim suspension." *Id.* at 66.

Dr. Conrad alleges deprivation of due process from the three working day notice provided to him concerning the Inquiry Panel's consideration of an emergency suspension order. [R. 16 at 14.] But, the Supreme Court has held that a professional's license may be suspended

without a pre-suspension hearing, *Barry v. Barchi*, 443 U.S. 55 (1979), and the Kentucky General Assembly has authorized the agency to "take emergency action . . . without a hearing . . . to stop, prevent, or avoid an immediate danger to the public health, safety, or welfare." Ky. Rev. Stat. § 13B.125(1)–(2). Notably, well before the July 20, 2017, hearing, the Florida Recovery Center had performed a 96-hour evaluation of Dr. Conrad and, consistent with Dr. Ward's initial findings, had concluded, "Dr. Conrad should refrain from practicing medicine as he cannot practice with reasonable skill and safety at this time." [R. 8-10.] Were the Inquiry Panel to issue an emergency order, KRS § 13B.125(3) allows the aggrieved party to demand an emergency hearing that must be held within ten working days of the party's request. Then, within five working days of holding the emergency hearing, the agency must "render a written decision affirming, modifying, or revoking the emergency order." Ky. Rev. Stat. § 13B.125(3).

The agency or hearing officer must be qualified, and will uphold the order "if there is substantial evidence of a violation of law which constitutes an immediate danger to the public health, safety, or welfare." *See* Ky. Rev. Stat. § 13B.040. Dr. Conrad believes that the standard of review for emergency orders deprives him of due process because the hearing officer must find that there is "a complete absence of factual basis for the findings" to determine that substantial evidence fails to support the inquiry panel's findings of fact. 201 KAR 9:240. While difficult to overcome, this burden creates a presumption in favor of the emergency order and prevents the hearing officer or panel from "substitut[ing] its judgment for that of the charging panel as to the weight of the evidence on questions of fact or the appropriate amount of protection unless the licensee rebuts the evidence upon which the presumption is based." [R. 9 at 13 (citing Ky. Rev. Stat. § 13B.150(2)).]

In *Barchi*, the Supreme Court held that "given the rebuttable nature of the 4120.5 presumption, the high standard of accountability is not unconstitutional." *Barry v. Barchi*, 443 U.S. 55, 62 (1979). Similarly, in the instant action, "the findings of fact in the emergency order shall constitute a rebuttable presumption of substantial evidence of a violation of law that constitutes immediate danger to the health, welfare, or safety of patients or the general public." Ky. Rev. Stat. § 311.592. Following emergency review, an order by the hearing officer or panel would constitute a final agency decision that could be appealed to the Franklin Circuit Court pursuant to KRS § 13B.140. Ky. Rev. Stat. § 13B.125(4). Emergency orders are temporary and, even if upheld, the order would only remain in effect until the Board resolves the complaint. [R. 9 at 4.]

Mr. Rodman and the Board maintain that the statutory process, as well as the administrative regulations adopted to carry out emergency orders, hearings, and appeals, are congruent with the protections provided by the United States Constitution and provide adequate due process for Dr. Conrad to challenge the revocation of his medical license fairly and meaningfully. [*See* R. 35-1 at 15–16 (referencing 201 KAR 9:240).] If Dr. Conrad were to challenge the finding of the Inquiry Panel at an emergency hearing, he would be entitled to present evidence, make oral or written statements, and present any number of records to rebut the evidentiary presumption. *See* 201 Ky. Admin. Regs. 9:240; *see also Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (explaining that "[t]he judicial model of an evidentiary hearing is neither a required, nor even the most effective, method of decisionmaking in all circumstances"). Further, if Dr. Conrad chose to appeal the final agency decision, the Kentucky state courts have jurisdiction to determine whether constitutional or statutory violations have occurred. Ky. Rev.

Stat. § 13B.150; *but cf.* Ky. Rev. Stat. Ann § 311.555 (restricting the Kentucky judiciary from interfering with the Board's actions unless the Board abused its discretion, acted beyond its legislative delegated authority, or violated procedures described in KRS § 311.591.).

Dr. Conrad argues that the Constitution protects a physician's right to practice his or her profession, and that this right cannot arbitrarily be denied. [R. 4-1 at 9.] Both the Supreme Court and Sixth Circuit "have long held that the freedom to choose and pursue a career, to engage in any of the common occupations of life, qualifies as a liberty interest which may not be arbitrarily denied by the State." *Benjamin v. Brachman*, 246 F. App'x 905, 918 (6th Cir. 2007) (quoting *Parate v. Isibor*, 868 F.2d 821, 831 (6th Cir. 1989)). But, it appears that Dr. Conrad's recent licensure review was initiated for reasons far from arbitrary, and he fails to cite to case law or factually similar precedent that might suggest the Board's process is improper. Rather than capricious or irrational, these administrative proceedings were reasonably initiated following serious complaints concerning Dr. Conrad's patient care while he was employed as a hospitalist at Ephraim McDowell Regional Medical Center in Danville, Kentucky. Upon the Foundations' referral for evaluation, Dr. Will Ward demonstrated concern for Dr. Conrad and recommended further treatment at the Florida Recovery Center. There, after an exhaustive 96-hour evaluation, the FRC found that Dr. Conrad lacked the ability to practice medicine "with reasonable skill and safety at this time." [R. 8-10.]

As stated previously, this Court is poorly situated to second-guess the medical diagnoses of multiple healthcare professionals or to determine Dr. Conrad's competency to practice medicine. Even so, the processes Dr. Conrad was afforded to this point and the procedures that remain to be exercised suggest that he has received sufficient notice of the Board's investigative

process and he has "the opportunity to be heard at a meaningful time and in a meaningful manner." *See Benjamin v. Brachman*, 246 F. App'x 905, 914 (6th Cir. 2007) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). Further, Dr. Conrad will be afforded the opportunity to meaningfully challenge the Board's conclusion in Franklin Circuit Court once a final decision has been rendered by the Board. Thus, even by drawing all inferences in favor of Dr. Conrad, Dr. Conrad's claims for violation of due under the legal standards of a claim for violation of due process, Dr. Conrad fails to state a claim upon which relief is plausible, and must be dismissed under Rule 12(b)(6).

## E

Next, Dr. Conrad claims in Counts Four and Six that the Board, Mr. Rodman, and Dr. Ward violated his rights to equal protection under the Fourteenth Amendment, as well as violated the Americans with Disability Act, for subjecting him to disciplinary actions because he suffers from Attention Deficit Hyperactivity Disorder and has a history of alcoholism.

For a valid claim under the Equal Protection Clause, "a plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *LRL Properties v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1111 (6th Cir. 1995) (quoting *Henry v. Metro. Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990)). However, a disability is not a "suspect class" for the purposes of an equal protection claim, and a state may treat disabled persons differently as long as those actions are rationally related to a legitimate governmental purpose. *Popovich v. Cuyahoga Cty. Court of Common Pleas, Domestic Relations, Div.*, 276 F.3d 808 (6th Cir. 2002) (citing *Bd. Of Trustees. Of Univ. of Al. v. Garrett*, 531 U.S. 356, 366–67 (2001)). Kentucky authorizes the Board to take immediate and emergency

24

action if the Board determines that a physician's medical practice "constitutes a danger to the health, welfare, and safety of his patients or the general public." Ky. Rev. Stat. § 311.592. A physician who becomes unable to practice medicine because of an addition or due to a mental or physical illness falls into this category. *See* Ky. Rev. Sta. § 311.595(6)–(8). The need to ensure that Kentuckians are receiving quality healthcare from competent physicians is a legitimate government interest, evidenced by the power of the Kentucky General Assembly to establish the Board. Additionally, the actions taken against Dr. Conrad were not because of his purported disability, but because of a concern in his ability to manage any symptoms. The Court finds that the Board's emergency action against Dr. Conrad is rationally related to the Board's legitimate governmental interest to ensure patients treated by Kentucky-licensed doctors are receiving quality health care. Thus, Count Four of Dr. Conrad's complaint must be dismissed under Rule 12(b)(6).

Furthermore, Dr. Conrad has not shown he is disabled within the meaning of the Americans with Disabilities Act. Dr. Conrad asserts, and the Defendants do not deny, that he has been diagnosed with ADHD and that the Board considers him to suffer from an Alcohol Use Disorder. [R. 40 at 32–33.] However, a person meets the ADA definition of "disabled" only when such physical or mental impairment "substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A). A simple diagnosis of such conditions does not necessarily mean that such condition is "substantially limiting" on "major life activities." *See Gonzales v. Nat'l Bd. Of Med. Exam'rs*, 225 F.3d 620, 626 (6th Cir. 2000). Dr. Conrad has not demonstrated that such conditions limit his life activities at all. In fact, Dr. Conrad has alleged in his complaint that his treating psychiatrist did not believe him to be

25

impaired by these conditions in any manner that would interfere with his abilities as a physician. [R. 16 at ¶25.] Therefore, any claims that the Defendants violated the Americans with Disabilities Act must be dismissed as well.

## F

Finally, in Count Five, Dr. Conrad believes that Mr. Rodman, Dr. Ward, Dr. Jones, the Board, and the Foundation all conspired to subject him to "intrusion upon seclusion" by illegally obtaining Dr. Conrad's KASPER report. Kentucky law follows the Restatement (Second) of Torts for torts involving the invasion of privacy, such as an intrusion upon seclusion claim. *McCall v. Courier-Journal and Louisville Times Co.*, 623 S.W.2d 882, 887 (Ky. 1981); *see also Modern Hair Salon, Inc. v. Calvin Mitchell, Inc.*, No. 2015-CA-001417-MR, 2017 WL 544637 at *5 (Ky. Ct. App. Dec. 15, 2015). To succeed on such a claim, a plaintiff must demonstrate an intentional intrusion by the defendants into a matter in which the plaintiff has a right to privacy, and which would be highly offensive to a reasonable person. Restatement (Second) of Torts § 652B (1977); *see also Smith v. Bob Smith Chevrolet, Inc.*, 275 F.Supp.2d 808, 821–22 (W.D. Ky. 2003).

In order to monitor the prescription of controlled substances, the Kentucky General Assembly created the Kentucky All Schedule Prescription Electronic Reporting (KASPER) system, which tracks the prescription and dispensing of certain controlled substances by doctors, nurses, pharmacists, and other health care providers. Ky. Rev. Stat. § 218A.202. Each provider registered with the system maintains a KASPER report that includes data for each controlled substance associated with that provider, including patient identifiers, the drug dispensed, dates and quantities of dispensing, the name of the prescriber, and the name of the dispenser. Ky. Rev.

Stat. § 218.202(5). Understandably, such private information is released only for specialized purposes. KRS § 218A.202(7)(a) authorizes disclosure of these reports and this data to "A designated representative of a board responsible for the licensure, regulation, or discipline of practitioners, pharmacists, or other person who is authorized to prescribe, administer, or dispense controlled substances and who is involved in a bona fide specific investigation involving a designated person." Kentucky courts have interpreted this to permit disclosure to "any person who is a designated representative" of the Board. *Sangster v. Ky. Bd. Of Med. Licensure*, 345 S.W. 3d 853, 856 (Ky. Ct. App. 2010). So while the Board is not allowed to use the KASPER report as evidence at a hearing without a court order, the Board is able to disseminate the report among its investigators and consultants. *Id.* Here, Mr. Rodman, as the executive director of the Board, is obviously a "representative" contemplated in KRS § 218A.202(7)(a), and Dr. Conrad does not dispute that the Board is permitted to review his KASPER report. Authorized by KRS § 311.616(1), the Board contracted with the Foundation, Dr. Ward, and Dr. Jones for consultation pursuant to their investigation. Thus, under *Sangster*, KRS § 218A.202(7(a) permits disclosure of Dr. Conrad's KASPER report to the Board, the Foundation, Dr. Ward, Dr. Jones, and Mr. Rodman. This Court has no doubt that the improper disclosure of a KASPER report would be offensive and would be a significant intrusion on Dr. Conrad's privacy. However, Dr. Conrad has no legal privacy right to his KASPER report against the Board and the Foundation when the Board has initiated an investigation. Thus, his intrusion upon seclusion claim against the Board, the Foundation, Dr. Ward, Dr. Jones, and Mr. Rodman necessarily fails.

In his Response, Dr. Conrad now claims that Dr. Ward obtained his KASPER report at least twenty-four days before the Board learned of the Foundation's investigation. [R. 40 at 26.]

However, in the Complaint, Dr. Conrad alleges that Dr. Beth Housman, his treating psychiatrist, had obtained the KASPER reports prior to writing a report for the Foundation. [R. 16 at ¶25.] This occurred on April 11, 2017, the same day that the Foundation alerted the Board to their investigation. *Id.* at ¶ 26. Dr. Housman is not a defendant in this case, and is permitted to request this information as his treating physician.[5] Ky. Stat. Ann. § 218A.202(e). Dr. Conrad does not allege in his Complaint facts that would suggest the *Foundation* actually obtained a copy of the KASPER report prior to the official investigation, only that Dr. Housman was in possession of the information. Even so, the Foundation, through its investigation into the conduct of Dr. Conrad, was acting as a representative of the Board and authorized to view the KASPER report at that time. Ky. Rev. Sta. 218A.202(7)(a).

### III

In this action, Dr. Conrad has brought several constitutional challenges to the Kentucky Board of Medical Licensure's decision to suspend his license. However, the Kentucky General Assembly has already established an adequate and constitutional process to challenge such a decision within the state and administrative processes. Thus, Dr. Conrad has failed to provide any claim upon which this Court could grant relief. Accordingly, for the aforementioned reasons, it is hereby **ORDERED** as follows:

1.    Defendant Andy Beshear's Motion to Dismiss [**R. 34**] is **GRANTED**;

2.    Defendants Kentucky Board of Medical Licensure's and Michael S. Rodman's Motion to Dismiss [**R. 35**] is **GRANTED**;

---

[5] Dr. Conrad alleges he had been treated for three years by Dr. Housman for ADHD, in which she monitored his KASPER reports on whether they were consistent with the appropriate use of the medication she prescribed. [R. 16 at ¶25.]

3.        Defendant Matt Bevin's Motion Dismiss [**R. 36**] is **GRANTED;**

4.        Defendant Dr. Gregory L. Jones's Motion to Dismiss [**R. 38**] is GRANTED;

5.        Defendants Kentucky Committee on Impaired Physicians, Inc.'s and Dr. Will W. Ward, Jr.'s Motion to Dismiss [**R. 39**] is **GRANTED**; and

6.        All claims asserted by Plaintiff Brandon Conrad against all Defendants in this matter are **DISMISSED WITH PREJUDICE.**

This the 16th day of February, 2018.

Gregory F. Van Tatenhove
United States District Judge